**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 13-cv-00725-CMA-KLM

AURORA BANK, FSB,

    Plaintiff,

v.

SEATTLE BANK f/k/a SEATTLE SAVINGS BANK,

    Defendant.

---

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS
FOR LACK OF JURISDICTION AND VENUE**

---

This case arises out of claims made by Plaintiff Aurora Bank, FSB against Defendant Seattle Bank f/k/a Seattle Savings Bank for breach of contract and breach of express warranty relating to the purchase of residential mortgage loans. (Doc. # 3 at 10–12.) This matter is before the Court on Defendant Seattle Bank's Motion to Dismiss for lack of Jurisdiction and Venue, or, in the alternative, Motion to Transfer Venue to the Western District of Washington. (Doc. # 14.) For the reasons stated below, Defendant's motion is granted in part as to the lack of personal jurisdiction, and denied as moot as to Defendant's request to transfer venue.

## I. BACKGROUND

Defendant Seattle Bank is incorporated in the state of Washington, with its principal place of business in Seattle. (Doc. # 14 at 1-2.) It operated as "Seattle

Savings Bank" until about 2009, when it changed its name to "Seattle Bank." (Doc. # 14 at 2.) Defendant asserts that it is a local community bank that focuses its lending efforts on loans to customers in the Puget Sound area of Washington. (*Id.*) Defendant alleges that it (1) is not registered to do business in Colorado; (2) has never transacted business, or originated any loans, in Colorado; (3) has no offices in Colorado; (4) has not advertised in Colorado and would not lend on a transaction in Colorado. (Doc. # 14 at 4.) However, Defendant's majority shareholder, Seattle Financial Group, had stake in another corporation, Seattle Mortgage Company, which conducted business in Colorado until 2008. (Doc. # 30 at 6.) The parties disagree over whether Seattle Bank and Seattle Mortgage Company were operating as essentially the same entity, or as distinct entities, during the relevant timeframe.

Plaintiff Aurora Bank, FSB, was formerly known as Lehman Brothers Bank, FSB. (Doc. # 22 at n.1.) Lehman Brothers Bank was incorporated and headquartered in Delaware. (Doc. # 14 at 3.) Plaintiff is now headquartered in Colorado. (Doc. # 30 at 3.) On April 20, 2006, Defendant entered into a Loan Purchase Agreement with Lehman Brothers Bank, which allowed Defendant to sell certain residential mortgage loans to Lehman Brothers Bank. (Doc. # 14 at 2.) The Agreement was governed by New York law. (*Id.*) In the process of forming the Agreement, Defendant sent a Correspondent Application to Aurora Loan Services ("ALS"), Plaintiff's wholly owned subsidiary in Colorado. (Doc. # 22 at 3.) ALS is a Delaware corporation with its principal place of business in Colorado. (Doc. # 22 at 3.) Defendant admits that it knew

that ALS was affiliated with Lehman Brothers Bank, and that ALS would assist Lehman Brothers Bank in evaluating the Correspondent Application and in later servicing any loans that Defendant sold to Lehman Brothers Bank. (Doc. # 30 at 4.) Additionally, the Loan Purchase Agreement later signed by the parties expressly incorporated the terms and provisions of ALS's Seller's Guide. (Doc. # 22 at 5.)

On February 13, 2007, Defendant loaned money to Wendy Mitchell as part of a mortgage refinance on her home in Washington. (Doc. # 14 at 3.) Shortly thereafter, Defendant sold that loan to Lehman Brothers Bank pursuant to the Loan Purchase Agreement. (*Id.*) On June 25, 2012, claiming a breach of the Loan Purchase Agreement, Plaintiff sent a demand letter to the Defendant, asking it to either repurchase the Mitchell loan or indemnify the Plaintiff. (Doc. # 22 at 2.) When Defendant refused Plaintiff's demand, Plaintiff brought the current action for breach of contract and breach of express warranty. (*Id.*)

## II. STANDARD OF REVIEW

Plaintiff bears the burden of establishing the Court's personal jurisdiction over the Defendant. *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.,* 514 F.3d 1063, 1070 (10th Cir. 2008). Where, as here, a district court considers a pre-trial motion to dismiss for lack of personal jurisdiction, the plaintiff need only make a *prima facie* showing of personal jurisdiction. *AST Sports Sci., Inc. v. CLF Distrib. Ltd.,* 514 F.3d 1054, 1056–57 (10th Cir. 2008).

In resolving this motion, the Court accepts as true all well-pled facts—*i.e.*, facts that are neither conclusory nor speculative—alleged by the Plaintiff. *Dudnikov,* 514 F.3d at 1070. Additionally, Plaintiff has "the duty to support jurisdictional allegations in a complaint by competent proof of the supporting facts if the jurisdictional allegations are challenged by an appropriate pleading." *Pytlik v. Prof'l Res., Ltd.,* 887 F.2d 1371, 1376 (10th Cir. 1989). If the parties' affidavits conflict, the conflicts "must be resolved in the plaintiff's favor, and the plaintiff's *prima facie* showing is sufficient notwithstanding the contrary presentation by the moving party." *Wenz,* 55 F.3d at 1505 (internal quotation marks and citation omitted).

### III. DISCUSSION

**A. LAW**

To obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show (1) that jurisdiction is legitimate under the laws of the forum state, and (2) that the exercise of jurisdiction does not offend the Due Process Clause. *Soma Med. Int'l v. Standard Chartered Bank,* 196 F.3d 1292, 1295 (10th Cir. 1999) (citation omitted). In Colorado, this two-pronged inquiry collapses into one inquiry, because "Colorado's long arm statute is coextensive with constitutional limitations imposed by the due process clause." *Grynberg v. Ivanhoe Energy, Inc.,* 666 F. Supp. 2d 1218, 1229 (D. Colo. 2009) (internal quotation marks and citation omitted). Thus, "if jurisdiction is consistent with the due process clause, Colorado's long arm statute authorizes jurisdiction over a

nonresident defendant." *Id.* Therefore, the Court asks only whether the exercise of personal jurisdiction over Defendant comports with due process.

To determine if the exercise of personal jurisdiction over the Defendant offends due process, courts consider (1) "whether the non-resident defendant has 'minimum contacts' with the forum state" such that he should have reasonably anticipated being haled into court there, and (2) whether the "exercise of jurisdiction over the Defendant offends 'traditional notions of fair play and substantial justice,' that is, whether the exercise of jurisdiction is 'reasonable' under the circumstances." *Melea, Ltd. v. Jawer SA,* 511 F.3d 1060, 1065 (10th Cir. 2007).

Plaintiff contends that Defendant is subject to specific personal jurisdiction in Colorado because it has had sufficient minimum contacts with Colorado.[1] The determination of "whether a non-resident defendant has the requisite minimum contacts with the forum state to establish *in personam* jurisdiction must be decided on the particular facts of each case." *Benton v. Cameco Corp.*, 375 F.3d 1070, 1076 (10th Cir. 2004). To have sufficient minimum contacts for specific personal jurisdiction, the out-of-state defendant must have (i) purposefully directed activities at forum residents, and (ii) the litigation must result from alleged injuries that arise out of those forum-related activities. *Dudnikov,* 514 F.3d at 1071 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). The Supreme Court has said that the aim of the "purposeful direction"

---

[1] The Court need not discuss whether there was "general" personal jurisdiction because the Plaintiff has not alleged that Defendant had "continuous and systematic contacts" with Colorado sufficient to permit the Court to exercise such jurisdiction. *See Beverly Kuenzle, Wayne Kuenzle v. HTM Sport-Und Freizeitgerate AG*, 102 F.3d 453, 455-56 (10th Cir. 1996); *see also Dudnikov*, 514 F.3d at 1078-79 (discussing the distinction between general and specific personal jurisdiction).

doctrine is to "ensure that an out-of-state defendant is not bound to appear to account for merely 'random, fortuitous, or attenuated contacts' with the forum state."  *Dudnikov*, 514 F.3d at 1071.

A defendant is not necessarily subject to personal jurisdiction in a forum state simply because he enters into a contract with a party that resides in that forum.  *Burger King*, 471 U.S. at 478 (an individual's contract with an out-of-state party cannot automatically establish sufficient minimum contacts in that party's home forum); *SGI Air Holdings II LLC. v. Novartis Int'l, AG*, 192 F. Supp. 2d 1195, 1202 (D. Colo. 2002) (same).  However, a contract may establish sufficient minimum contacts with the forum state where it has a "substantial connection" with that forum state.  *TH Agriculture & Nutrition, LLC v. Ace European Grp. Ltd.,* 488 F.3d 1282, 1288 (10th Cir. 2007).   Without substantial connection, there may be no personal jurisdiction even in cases where the defendant enters that forum state to discuss some of the details of the contract.  *See SGI Air Holdings II*, 192 F. Supp. 2d at 1202.

Similarly, entering into a contract with a resident of the forum state and exchanging communication in furtherance of that contract does not necessarily create sufficient contacts to justify the exercise of specific personal jurisdiction.  *SGI Air Holdings II*, 192 F. Supp. 2d at 1203 ("Negotiations conducted over various electronic devices, in the absence of further contact, do not rise to the level of purposeful availment contemplated by the courts."); *G & G Int'l, LLC v. Camsing Co.*, No. 09-CV-00366-MSK-MEH, 2010 WL 466812, at *2 (D. Colo. Feb. 9, 2010) ("[E]ntering into a contract with a resident of the

forum state and exchanging interstate telephone calls and messages in furtherance of that contract does not, of itself, necessarily create sufficient contacts with the forum state to support the exercise of personal jurisdiction."). "[T]he mere quantum of contacts between the forum and defendant is not determinative; [r]ather, the quantity of the contacts, their significance to the venture, and the overall purpose of the parties' efforts all factor into an assessment of the sufficiency of the contacts." *G & G Int'l*, 2010 WL 466812, at *2.

**B.  ANALYSIS**

In the instant case, Defendant, a Washington entity, entered into the contract at issue with Plaintiff, then a Delaware company, outside of Colorado. (Doc. # 14 at 1-3.) The parties agreed that the contract would be governed by New York law. (*Id.* at 2.) The Mitchell loan, the transaction underlying the claims in this case, was made in Washington to a Washington resident. (*Id.* at 3.)

Plaintiff asserts that the following contacts with Colorado subject Defendant to specific personal jurisdiction: (1) submitting the Correspondent Application to Plaintiff's wholly-owned subsidiary in Colorado; (2) entering into the Loan Purchase Agreement knowing that a Colorado entity would be servicing the loans; (3) entering into the Loan Purchase Agreement knowing that a Colorado entity's Seller's Guide was incorporated into the contract; (4) communicating with Plaintiff, a Colorado entity, regarding Plaintiff's demand for indemnification; and (5) operating in Colorado as "Seattle Mortgage Company" for a number of years, until 2008. (Doc. # 22 at 4-5.)

In the process of forming an agreement with the Delaware-based Plaintiff, Defendant sent a separate Correspondent Application for approval to Plaintiff's wholly-owned subsidiary in Colorado. (Doc. # 22 at 2-3.) Plaintiff alleges this as an important fact in the jurisdiction analysis, but fails to explain this Application's significance to the venture and, without further explanation, merely states that "following approval of Defendant's Correspondent Application, Plaintiff and Defendant entered the written Loan Purchase Agreement." (*Id.* at 3.) Because the Plaintiff retains the burden to establish jurisdiction over Defendant and has the duty to support its allegations by facts, *Dudnikov,* 514 F.3d at 1070, the Court cannot presume the importance of Defendant's submission of the Correspondent Application to ALS in Colorado.[2] Even if this one contact was somehow significant to the later Loan Purchase Agreement at issue in this case, sending one application to a subsidiary in Colorado that allowed for the formation of a later contract with a parent outside of Colorado is not sufficient to support jurisdiction. *See Burger King,* 471 U.S. at 478 (forming a contract with an out-of-state party cannot, by itself, establish sufficient minimum contacts in that party's home forum).

Moreover, when Defendant sent the Correspondent Application to ALS, Defendant was not forming a contract with a Colorado entity. (*See* Doc. # 22 at 3.) The contract that was allegedly breached is the Loan Purchase Agreement formed outside of Colorado between two non-Colorado entities and which is governed by New York law. (*See* Doc. # 14 at 1-2.) In entering into that contract, Defendant was seeking to do business with

---

[2] Additionally, because Plaintiff does not establish the role the Correspondent Application plays in the alleged breach of the Loan Purchase Agreement, the Court cannot assume that Plaintiff's claim arises out of the Correspondent Application.

8

a Delaware corporation, which directed Defendant to send an application (of unknown importance) to its loan servicer, a subsidiary located in Colorado. *See G & G Int'l*, 2010 WL 466812, at *2 (no specific jurisdiction where defendant sought out Maryland parent, which directed defendant to a Colorado subsidiary, because no activities were undertaken in Colorado except those associated with ordinary contract administration, and contacts with the Colorado subsidiary were less significant than the primary communications with the Maryland parent company upon which the business venture was based). This scenario does not support Plaintiff's contention that Defendant purposefully directed its activities at Colorado. *See Dudnikov,* 514 F.3d at 1071; *cf. Quarles v. Fuqua Indus., Inc.,* 504 F.2d 1358, 1364 (10th Cir. 1974) ("[A] wholly owned subsidiary may be an agent and when its activities as an agent are of such a character as to amount to doing business of the parent, the parent is subjected to the in personam jurisdiction of the state.") (quoting *Curtis Publ'g Co. v. Cassel,* 302 F.2d 132, 137 (10th Cir. 1962)).

Similarly, the Court is not convinced that Defendant subjected itself to jurisdiction in Colorado because it signed the Loan Purchase Agreement knowing that ALS, a Colorado entity, would be servicing its loans. (*See* Doc. # 22 at 4.) Even though the Loan Purchase Agreement established that ALS would service any future loans, foreseeability that a Colorado entity may be involved in the future to service loans for the Plaintiff after Defendant sold them to Plaintiff is not enough to subject Defendant to personal jurisdiction in Colorado. *See World-Wide Volkswagen Corp. v. Woodson*, 444

U.S. 286, 295-97 (1980) ("[F]oreseeability alone has never been a sufficient benchmark for personal jurisdiction"; foreseeability is only relevant to the degree that "defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there"). Moreover, although the Loan Purchase Agreement "contemplated business activities involving a Colorado based corporation, there is no showing [Defendant] transacted business in Colorado." *Encore Productions, Inc. v. Promise Keepers*, 53 F. Supp. 2d 1101, 1117 (D. Colo. 1999) (subcontract that contemplates business in Colorado not a sufficient basis for specific jurisdiction). Indeed, despite the foreseeability of ALS's involvement at the time the parties entered into the Loan Purchase Agreement, ALS's involvement with the Mitchell loan that underlies this suit was a result of Plaintiff's acts, not Defendant's. *See Hanson v. Denckla*, 357 U.S. 235, 253 (1958) ("The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State.") Once the Mitchell loan was sold by Defendant to then Delaware-based Plaintiff, its involvement with the loan ceased. Even though ALS later became involved in servicing the Mitchell loan, Defendant's business activities were aimed at Lehman Brothers Bank, a Delaware corporation, and not at ALS. Thus, Plaintiff's use of its Colorado-based subsidiary to service loans is irrelevant to the jurisdictional analysis.

Further, signing the Loan Purchase Agreement knowing that ALS's Seller's Guide was incorporated into the Agreement also does not subject Defendant to jurisdiction in

10

Colorado. *See Burger King*, 471 U.S. at 478. It is established that a defendant cannot be subject to jurisdiction for merely entering into a contract with an entity in the forum state. *Id.* Therefore, entering into a contract with a non-forum state entity that incorporates some terms from a document created by a subsidiary that happens to be located in the forum state is likewise not sufficient. *See id.* It is also important that the entire Agreement, including the incorporated Seller's Guide, is governed by New York law. (Doc # 14 at 2.) This signals that, despite entering into an agreement that incorporated a Colorado entity's terms, the Defendant did not purposefully invoke the benefits and protections of Colorado's laws. *See Hanson*, 357 U.S. at 253 (specific jurisdiction exists where defendant "purposely avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws"). Therefore, the Loan Purchase Agreement does not have a "substantial connection" to Colorado and cannot support the Court's jurisdiction over the Defendant.

Plaintiff also alleges that Defendant is subject to specific personal jurisdiction in Colorado because it communicated with Plaintiff concerning its alleged breach of contract. (Doc # 22 at 5.) However, simply communicating about the matters that gave rise to this suit is insufficient to justify exercising jurisdiction over Defendant. *Associated Inns & Rest. Co. of Am. v. Dev. Associates*, 516 F. Supp. 1023, 1026-27 (D. Colo. 1981) (plaintiff's unilateral act of sending demand letter to defendant and resulting interstate correspondence was an insufficient basis for exercise of jurisdiction).

Last, Plaintiff alleges that Defendant is subject to jurisdiction in Colorado because it did business in Colorado under the trade name "Seattle Mortgage Company" until 2008. (Doc # 22 at 3.)   Defendant alleges that Seattle Mortgage Company, though a sister subsidiary, is a distinct entity.   (Doc # 30 at 6.)   Resolving whether Defendant and Seattle Mortgage Company operated as distinct subsidiaries of their parent company, or whether they operated as essentially the same entity, is unnecessary to this analysis.[3] For this contact to become the basis of specific personal jurisdiction, the claims in this case must arise out of Seattle Mortgage Company's transactions in Colorado. *Dudnikov,* 514 F.3d at 1071.   However, Plaintiff has not established that Seattle Mortgage Company's activities gave rise to any of the claims in this suit or that its activities in Colorado until 2008 are at all associated with the Loan Purchase Agreement and the Mitchell loan at issue in this case.

In sum, viewing the record as a whole, Defendant did not purposefully direct its activities at Colorado such that it should have reasonably anticipated being haled into court here.   Rather, Defendant's contacts with Colorado, even when taken together, were fortuitous and attenuated.   Therefore, exercising personal jurisdiction over the Defendant would be inappropriate in this case.[4]

---

[3] Again, the Plaintiff does not argue that Defendant is subject to general jurisdiction in Colorado.   Seattle Mortgage Company's status as the same or a distinct entity and its contacts in Colorado could have been relevant if Plaintiff had alleged general jurisdiction over the Defendant.   *See Beverly Kuenzle*, 102 F.3d at 455-56.

[4] Because the Court determines that Plaintiff has not made its *prima facie* showing under step one (*i.e.*, it cannot demonstrate that Defendant had sufficient minimum contacts with the forum state), the Court need not analyze the "fair play and substantial justice" factors involved in the second step.

## IV. **CONCLUSION**

For the foregoing reasons, it is ORDERED that Defendant's Motion to Dismiss for Lack of Jurisdiction and Venue (Doc. # 14) is GRANTED IN PART as to the lack of personal jurisdiction and DENIED AS MOOT IN PART as to Defendant's request to transfer venue. It is

FURTHER ORDERED that, although each party shall bear its own attorneys' fees, Defendant shall have its costs by filing a Bill of Costs with the Clerk of the Court within fourteen days of the entry of judgment. It is

FURTHER ORDERED that this case be DISMISSED WITHOUT PREJUDICE.

DATED: October __21__, 2013

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge